IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| **UNITED SOVEREIGN AMERICANS, INC., et al.,**<br><br>Petitioners,<br><br>v.<br><br>**CORD BYRN, et al.,**<br><br>Respondents. | Civil Case Number:<br>4:24-cv-327-MW/MAF |

**UNITED STATES OF AMERICA'S MOTION TO
DISMISS PETITIONERS' SECOND AMENDED COMPLAINT**

Respondent Merrick Garland, in his official capacity as Attorney General of the United States, through the U.S. Attorney's Office (the "United States"), hereby moves to dismiss Petitioners' Second Amended Complaint (ECF 18) for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of standing; and under Rule 12(b)(6) for failing to state a claim upon which relief can be granted.

**INTRODUCTION**

Petitioner United Sovereign Americans, Inc., ("United Sovereign") is a Missouri based nonprofit corporation that has brought several purported voting rights actions throughout the nation challenging the Department of Justice's

1

involvement in federal elections.[1] In this action, Petitioner United Sovereign includes 10 other petitioners, one of which is another corporate entity, Citizens Defending Freedom. Each Petitioner lacks standing. Petitioners allege that Florida State election officials did not meet the minimum standards during Florida's 2022 federal election, and, as a result, the certified election results that year were unreliable. Petitioners fear that the same thing might be repeated in 2024 and beyond. Petitioners' prospective fears that so-called problems in Florida's 2022 elections could resurface in the 2024 and 2026 elections are speculative, at best, and do not give rise to a concrete and particularized injury. Moreover, Petitioners' mandamus claim is jurisdictionally deficient, as they cannot establish that the Attorney General has a clear, nondiscretionary duty to act. As such, the United States respectfully requests the Court to dismiss this action for lack of subject matter jurisdiction because Petitioners lack standing; and, because they fail to state a claim upon which relief can be granted.

---

[1] United Sovereign has filed the following similar actions in 2024: *Maryland Election Integrity, LLC v. Maryland State Board of Elections*, No. SAG-24-00672 (D. Md.); *United Sovereign Americans, et al., v. Commonw. of Penn, et al.*, No. 1:24-cv-01003 (M.D. Pa.); *United Sovereign Americans, et al., v. State of Ohio, et al.*, No. 5:24-cv-1359 (N.D. Ohio); *United Sovereign Americans, et al., v. Michigan Bureau Of Elections*, No. 5:24-cv-12256 (E.D. Mich.); *United Sovereign Americans, et al., v. North Carolina State Board of Elections, et al.,* No. 4:24-cv-00128 (E.D. N.C.), *transferred to* No. 5:24-cv-500 (W.D. N.C.); *United Sovereign Americans, et al., v. Secretary of the State of Texas,* No. 2:24-cv-184 (N.D. Tex.); and *Mary Benefield, et al., v. Brad Raffensperger, et al.*, No. 2:24-cv-104 (S.D. Ga.).

## BACKGROUND

Petitioners allege that Florida State election officials did not meet the minimum standards during Florida's 2022 federal election; and that Respondents – one of which is Merrick Garland, in his official capacity – have allegedly engaged in insufficient efforts to ensure that the 2022 performance is not repeated. ECF 18, ¶ 1. Petitioners further allege that the 69 named Respondents collectively rendered the certified election results that year unreliable through inaction. Petitioners fear the same thing will be repeated in 2024 and beyond. ECF 18, ¶ 1-2. Petitioners are not challenging the outcome of the 2022 federal election in Florida, or any "election results previously certified" or even the "certification of the 2024 General Election"; but rather they seek "the protection . . . of every voting citizen of the state[] to have their vote fairly counted." ECF 18, ¶¶ 20, 53.

Most of Petitioners' Complaint contains background statements, general allegations against the 69 "Respondents" collectively, or allegations against the State of Florida or County officials. Petitioners' allegations against the Department of Justice are contained in Paragraphs 273 to 291 of their complaint (ECF 18). Petitioners request that the Department of Justice specifically "take preventative measures" to guard against the so-called errors in the 2022 elections so they are not repeated in 2026. ECF 18, ¶ 279. These measures include, "mandating accurate registration rolls, transparency, compliance, and proper certification of the voting

systems." ECF 18, ¶ 286. Significantly, Petitioners are careful to note that they are not seeking relief in previous elections due to these so-called past election problems. *See* ECF 18, ¶¶ 20, 163, 197, 225, 243, 257, 267.

## **LEGAL FRAMEWORK**

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To invoke federal jurisdiction, a plaintiff must establish the three "irreducible" minimum requirements of Article III standing: (1) injury-in-fact, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "[T]he plaintiff bears the burden of establishing

4

subject matter jurisdiction." *Ishler v. Internal Revenue*, 237 Fed. App'x. 394, 395 (11th Cir. 2007).

## ARGUMENT

**I.  Petitioners Lack Standing Because They Fail to Allege Any Concrete or Particularized Injury.**

    **a. The corporate entities lack standing because they suffered no injury and cannot plausibly claim "associational standing."**

Corporate Petitioners United Sovereign and Citizens Defending Freedom are both corporate entities – one incorporated in Missouri and the other in Florida. ECF 18, ¶¶ 61-62. Neither entity purports to represent any members. *See id*.

The corporate Petitioners cannot identify an injury or the "invasion of a legally protected interest," nor can they adequately identify how that injury affects them "in a personal and individual way." *See Gill v. Whitford*, 585 U.S. 48, 65 (2018) (quoting *Lujan*, 504 U.S. at 560). Neither United Sovereign nor Citizens Defending Freedom can vote in federal elections and therefore cannot identify an invasion of a legally protected interest.

The United States District Court for the District of Maryland addressed a similar issue in a civil action brought by United Sovereign and found that the corporate entities did not have standing. *See Maryland election Integrity, LLC v. Maryland State Board of Elections*, No. SAG-24-00672, 2024 WL 2053773 (D. Md. May 8, 2024) ("the alleged harm is 'simply a setback to the organization's

5

abstract social interests' rather than a 'concrete and demonstrable injury to the organization's activities.'") (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

To the extent the corporate entities base their standing on the individual Petitioners, otherwise known as 'associational standing,' their complaint also fails. First, the complaint is devoid of any reference to individual Petitioners' membership in United Sovereign Americans or Citizens Defending Freedom. For standing, an association must plausibly plead that: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999) (quoting *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). Petitioners' associational standing fails because none of the individual Petitioners are members of the corporate Petitioners. And, as explained below, none of the individual Petitioners "have standing to sue in their own right." *See, e.g., Hunt*, 432 U.S. at 343.

### b. The individual Petitioners lack standing because they have suffered no injury.

The remaining Voting Petitioners claim to be Florida residents and are purportedly registered voters within the State of Florida. ECF 18, ¶¶ 144, 149.

6

Similar to the *Maryland* case, none of the Voting Petitioners provide any information as to whether they voted in Florida elections. *See Maryland*, 2024 WL 2053773; *see also Gill*, 585 U.S. at 65 ("a person's right to vote is individual and personal in nature."). Petitioners allege generalized grievances applicable to every voter within the State of Florida: "The prayer for relief seeks the protection of Petitioners' rights, as well as those of every voting citizen of the state, to have their vote fairly counted . . . ." *See* ECF 18, ¶ 53. Therefore, the alleged injuries are not particularized and concrete as to any Petitioner. *See Lujan*, 504 U.S. at 573–74 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."); *Maryland*, 2024 WL 2053773, *4 (citing *Moore v. Circosta*, 494 F. Supp. 3d 289, 312 (M.D.N.C. 2020) ("[T]he notion that a single person's vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury in fact necessary for Article III standing."); *Iowa Voter All. v. Black Hawk Cnty.*, 515 F. Supp. 3d 980, 991 (N.D. Iowa 2021) ("Because plaintiffs cannot show how the counties' alleged violations compromised the integrity of the election such that they were injured in a personal and individual way, their injury is undifferentiated

7

from the injury to any other citizen."); *O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-CV-03747, 2021 WL 1662742, at *6–8 (D. Colo. Apr. 28, 2021) (collecting cases dismissing allegations of election fraud for failure to show standing), aff'd, No. 21-1161, 2022 WL 1699425 (10th Cir. May 27, 2022), cert. denied sub nom. *O'Rourke v. Dominion Voting Sys.*, No. 22-305, 2022 WL 17408191 (U.S. Dec. 5, 2022)).

The hypothetical possibility that the so-called problems in the 2022 Florida state elections—"accurate registration rolls, transparency, compliance, and proper certification of the voting systems"—could resurface in the 2026 federal election is speculative at best and does not give rise to a certain impending injury. *See* ECF 18, ¶¶ 285-286. In fact, Petitioners repeatedly allege throughout their complaint what they "believe and therefore aver," but fail to base their beliefs in anything tangible. *See generally* ECF 18. "Allegations of possible future injury do not satisfy the requirements of Article III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990))

The Sixth Circuit Court of Appeals addressed a similar issue in *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977 (6th Cir. 2020) ("In the absence of imminent harm, the individual plaintiffs have no standing to sue and thus no basis for moving forward with their claims."). In *Shelby*, Plaintiffs alleged injuries based on "prior system vulnerabilities, previous equipment malfunctions,

8

and past election mistakes," did not create a cognizable imminent risk of harm. *Id*. at 981. Notably, Petitioners do not allege that any of these issues impacted their ability to register for the 2024 election. *See id.* at 981 (6th Cir. 2020) (noting plaintiffs' allegations of past election issues failed to meet injury in fact because, *inter alia*, "they do not allege that [the issues] ever happened to any of them or in any election in which they were candidates").

Accordingly, Petitioners have "failed to demonstrate the imminence of any injury in fact, depriving them of Article III standing to bring this claim." *See id.* at 983. This alone requires dismissal.

### c. Petitioners lack standing because they cannot show causation or redressability.

Petitioners cannot establish the remaining elements of standing: causation and redressability. For causation, the injury alleged "has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party before the court." *Lujan*, 504 U.S. at 560. For redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*.

Here, Petitioners allege that the Department of Justice has enforcement, policing, and prosecution powers that they have not employed to Petitioners' satisfaction. ECF 18, ¶¶ 275, 278, 279, 285, 286. Petitioners "believe and therefore aver" that election fraud ***may be*** occurring by third parties (ECF 18, ¶

9

226) and that the Department of Justice has "done nothing, or, at best, an inadequate job of addressing" Petitioners' concerns. ECF 18, ¶ 277. But Petitioners do not allege that their alleged injuries—fears that the 2026 election results will be unreliable—can be traced to the Department of Justice in any specific way. No Department of Justice enforcement guidelines, policies, or directives are mentioned in the complaint, nor do Petitioners provide examples of supposed action that should have been taken other than taking "preventative measures" to bring the State into compliance with HAVA. *See* ECF 18, ¶ 279. Without such allegations—or anything like them—Petitioners' alleged injury is not "fairly traceable" to the Department of Justice.

Finally, Petitioners cannot establish that their injuries are redressable by this Court. The relief they seek against the Department of Justice is a mandamus order that Defendant "enforce and police the two federal statutes at issue (NVRA and HAVA) for implementation in the Florida 2026 General Election and subsequent combined federal and state elections . . . " and to "bring the State [of Florida] into compliance. . . ." ECF 18, ¶¶ 278-279. As an initial matter, it is unclear how such an order would fix their injury as Petitioners have not alleged a specific injury based on the Department of Justice's inaction. *See Lujan*, 504 U.S. at 569. It is well-established that "federal courts are generally not the proper forum for resolving claims that the Executive Branch should make more arrests or bring

more prosecutions." *United States v. Texas*, 599 U.S. 679, 680 (2023). Indeed, Article II provides the Executive Branch discretionary authority to decide "how to prioritize and how aggressively to pursue legal actions," and "courts generally lack meaningful standards for assessing the propriety of enforcement choices in this area." *Id*. at 679. Because Petitioners cannot establish that their requested relief remedies their alleged injuries, or can even be granted by this Court, they lack redressability.

## II.  The Court Lacks Jurisdiction Over Petitioners' Mandamus Claim.

The Mandamus Act confers jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Jurisdiction "is inextricably bound with the merits of whether a writ of mandamus should issue; in order to establish either jurisdiction or entitlement to the writ, a court must find that a duty is owed to the plaintiff." *Pearson v. U.S. Postal Service*, No. 3:06-cv-190-MCR, 2007 WL 624536 (N.D. Fla. Feb. 22, 2007) (quoting *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987)).

Mandamus is a "drastic" remedy, "to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). "Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate

remedy is available." *Hoever v. Dept. of Homeland Sec.*, 637 Fed. App'x 565, 566 (11th Cir. 2016). "The party seeking mandamus has the burden of demonstrating that his right to the writ is clear and indisputable." *Id*. "Mandamus jurisdiction is appropriate only when, among other things, the defendant owes a clear non-discretionary duty to the plaintiff." *Alonso-Escobar v. USCUS Miami*, 462 Fed. App'x 933, 935 (11th Cir. 2012); *Heckler v. Ringer*, 466 U.S. 602, 617 (1984).

Here, Petitioners cannot establish any "duty owed" them by the Department of Justice within the meaning of Section 1361. "Mandamus is an extraordinary remedy available only where a petitioner has a clear right to demand the performance of a ministerial or mandatory duty . . . . If a petitioner seeks to compel the performance of a discretionary or directory duty, mandamus will not lie." *Friends of Aquifer, Inc. v. Mineta*, 150 F. Supp. 2d 1297, 1300 (N.D. Fla. 2001) (citations omitted). Petitioners allege that the Department of Justice "is responsible for the enforcement of federal election laws, including HAVA and NVRA," in the State of Florida and should "enforce and police" those statutes going forward. ECF 18, ¶¶ 275, 278, 279. As explained above, investigating and prosecuting are quintessential discretionary decisions. *See Texas*, 599 U.S. at 680. As such, Petitioners Mandamus claims fail.

Nor can Petitioners establish a clear right to relief. Petitioners allege violations of HAVA based on the error rate computed by United Sovereign

Americans' "expert analysts" that Petitioners claim exceeds HAVA's acceptable error rate. ECF 18, ¶¶ 214, 221, 226. But Petitioners admit that HAVA's error rate pertains to "voting systems" and not voter registration issues. *See* ECF 18, ¶¶ 229, 230; *see also* 52 U.S.C. § 21081(a)(5) (discussing the "error rate of the voting system in counting ballots" while excluding errors "attributable to an act of the voter"). The factual errors that Petitioners allege are inapposite to the HAVA violations alleged, so Petitioners cannot establish a "clear right to relief" under HAVA.

### III. Petitioners' All Writs Act Claim Must Be Dismissed.

Petitioners' All Writs Act claims are not brought against the Department of Justice. *See* ECF 18, ¶¶ 242-272. But to the extent Petitioners bring their All Writs Act claim against the Department of Justice, it must be dismissed. The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The Act enables federal courts to issue such commands "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. N.Y. Tel.*, 434 U.S. 159, 172 (1977). It does not authorize courts "to issue *ad hoc* writs whenever compliance with statutory procedures appears inconvenient or less

13

appropriate." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Id*.

Petitioners' All Writs Act claim mirrors their mandamus claim against the Department of Justice. *See, e.g.,* ECF 18, *compare* ¶¶ 245, 246, 247, 258, 259, 263 *with* ¶¶ 277, 278, 279, 286, 287, 292. Petitioners seek the same writ of mandamus under both statutes—one compelling the Department of Justice to enforce and police the NVRA and HAVA. ECF 18, ¶ 275. But the All Writs Act does not provide an independent source of jurisdiction, so Petitioners are not separately entitled to mandamus relief under it. *See Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 33 (2002) (noting "the All Writs Act does not confer jurisdiction under federal courts" so jurisdiction does not lie unless "specifically provide[d]" by Congress). As discussed above, Petitioners cannot establish their mandamus claim under 28 U.S.C. § 1361 because they do not allege a clear, nondiscretionary duty to act. Without jurisdiction under the Mandamus Act, their All Writs Act claim necessarily fails, too, as Petitioners do not assert any other claims in their complaint and, in fact, expressly disclaim other statutory authority for their claims. *See* ECF 18, ¶¶ 256-257 (alleging Petitioners have no remedy other than mandamus so that Respondents will enforce HAVA and NVRA but they are not bringing a "private cause of action" under those statutes).) The Court should

therefore dismiss Petitioners' All Writs Act claim against the Department of Justice.

## CONCLUSION

For these reasons, the United States respectfully requests the Court grant its motion and dismiss all claims against Respondent Merrick Garland, in his official capacity as Attorney General of the United States.

Respectfully submitted,

JASON R. COODY
United States Attorney

*/s/ John C. Spaccarotella*
**John C. Spaccarotella**
Assistant United States Attorney
New York Reg. No: 4304291
111 North Adams Street, 4th Floor
Tallahassee, FL 32301
Telephone: 850-216-3862
Fax: 850-942-8466
Email: john.spaccarotella@usdoj.gov
*Counsel for the United States of America*

## LOCAL RULE 7.1(F) CERTIFICATION

I HEREBY CERTIFY that this memorandum contains 3286 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).

**LOCAL RULE 5.1(F) CERTIFICATION**

I HEREBY CERTIFY that a copy of the foregoing has been furnished via CM/ECF to all interested parties, this 20th day of November, 2024.

                                      */s/ John C. Spaccarotella*
                                      **John C. Spaccarotella**
                                      Assistant United States Attorney
                                      Counsel for United States of America