Bruce L. Castor, Jr.
PA I.D. No. 46370
Attorney for Petitioners

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | |
|---|---|
| UNITED SOVEREIGN AMERICANS, INC. | CIVIL ACTION |
| 167 Lamp and Lantern Village, Suite 194 | |
| Chesterfield, MO 63017 | Case No.: 4:24-cv-00327-MW-MAF |
| | |
| *And* | Chief Judge Mark E. Walker |
| | Magistrate Martin A. Fitzpatrick |
| CITIZENS DEFENDING FREEDOM | |
| 7901 4th Street, Suite 300 | |
| St. Petersburg, FL 33702 | |
| | **PETITIONERS' RESPONSE IN** |
| *And* | **OPPOSITION TO RESPONDENT** |
| | **MERRICK GARLAND'S MOTION** |
| JEFFREY BUONGIORNO | **TO DISMISS** |
| 3851 N. Ocean Blvd. #406 | |
| Gulfstream, FL 33483 | |
| | |
| *And* | |
| | |
| CATHI CHAMBERLAIN | |
| 10520 San Ferando Blvd. NE | |
| St. Petersburg, FL 33702 | |
| | |
| *And* | |
| | |
| GABRIELLE FOX | |
| 3330 Fairchild Gardens Ave., #33663 | |
| Palm Beach Gardens, FL 33410 | |
| | |
| *And* | |
| | |
| CHRISTOPHER GLEASON | |
| 1628 Sand Keys Estates Court | |
| Clearwater, FL 33767 | |

i

*And*

GERRY JAMES
4811 Otter Creek Lane
Ponte Vedra Beach, FL 32082

*And*

JUDITH JENSEN
22714 NM 191st Lane
High Springs, FL 32643

*And*

JANE JUSTICE
361 Via Ponciana, #314
Lake Worth, FL 33467

*And*

MICHAEL PETERS
241 Alameda Ave.
Fort Myers, FL 33905

*And*

DAVID SCHAFFEL
4344 Montalvo Ct.
Naples, FL 34109

                    *Petitioners,*

v.

CORD BYRD, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF THE
STATE OF FLORIDA
500 S. Bronough St.
Tallahassee, FL 32399

*And*

ASHLEY MOODY, IN HER OFFICIAL
CAPACITY AS ATTORNEY GENERAL OF
THE STATE OF FLORIDA
PL-01, The Capitol

Tallahassee, FL 32399

*And*

KIM A. BARTON, IN HER OFFICIAL
CAPACITY AS ALACHUA COUNTY
SUPERVISOR OF ELECTIONS
515 N. Main St., Suite 300
Gainesville, FL 32601

*And*

CHRIS MILTON, IN HIS OFFICIAL
CAPACITY AS BAKER COUNTY
SUPERVISOR OF ELECTIONS
32 n. 5th St., Suite A
Macclenny, FL 32063

*And*

NINA WARD, IN HER OFFICIAL
CAPACITY AS BAY COUNTY
SUPERVISOR OF ELECTIONS
830 W. 11th St.
Panama City, FL 32401

*And*

AMANDA SEYFANG, IN HER OFFICIAL
CAPACITY AS BRADFORD COUNTY
SUPERVISOR OF ELECTIONS
P.O. Box 58
Starke, FL 32091

*And*

TIM BOBANIC, IN HIS OFFICIAL
CAPACITY AS BREVARD COUNTY
SUPERVISOR OF ELECTIONS
2725 Judge Fran Jamieson Way
Building C, Suite 105
Viera, FL 32940

*And*

JOE SCOTT, IN HIS OFFICIAL CAPACITY
AS BROWARD COUNTY SUPERVISOR
OF ELECTIONS
4650 NW 21st Ave.
Fort Lauderdale, FL 33309

*And*

MERRICK GARLAND, IN HIS OFFICIAL
CAPACITY AS ATTORNEY GENERAL OF
THE UNITED STATES
950 Pennsylvania Ave NW
Washington DC 20530

*And*

SHARON CHASON,
IN HER OFFICIAL CAPACITY AS
CALHOUN COUNTY SUPERVISOR OF
ELECTIONS
20859 Central Ave. East, Rm 117
Blountstown, FL  32424

*And*

LEAH VALENTI, IN HER OFFICIAL
CAPACITY AS CHARLOTTE COUNTY
SUPERVISOR OF ELECTIONS
226 Taylor Street, Unit 120
Punta Gorda, FL  33950

*And*

MAUREEN "MO" BAIRD, IN HER
OFFICIAL CAPACITY AS CITRUS
COUNTY SUPERVISOR OF ELECTIONS
1500 N. Meadowcrest Blvd.
Crystal River, FL  34429

*And*

CHRIS H. CHAMBLESS, IN HIS OFFICIAL
CAPACITY AS CLAY COUNTY
SUPERVISOR OF ELECTIONS
500 N. Orange Ave.
Green Coe Springs, FL  32043

iv

*And*

MELISSA R. BLAZIER, IN HER OFFICIAL
CAPACITY AS COLLIER COUNTY
SUPERVISOR OF ELECTIONS
Rev. Dr. Martin Luther King Jr. Building
3750 Enterprise Avenue
Naples, FL  34104

*And*


TOMI S. BROWN, IN HER OFFICIAL
CAPACITY AS COLUMBIA COUNTY
SUPERVISOR OF ELECTIONS
971 W. Duval Street, Ste 102
Lake City, FL  32005-3728

*And*


MARK F. NEGLEY, IN HIS OFFICIAL
CAPACITY AS DESOTO COUNTY
SUPERVISOR OF ELECTIONS
201 E. Oak Street, Suite 104
Arcadia, FL  34266

*And*


STARLET CANNON, IN HER OFFICIAL
CAPACITY AS DIXIE COUNTY
SUPERVISOR OF ELECTIONS
229 NE 351 Hwy, Suite A
P.O. Box 2057
Cross City, FL  32628

*And*


JERRY HOLLAND, IN HIS OFFICIAL
CAPACITY AS DUVAL COUNTY
SUPERVISOR OF ELECTIONS
105 E. Monroe Street
Jacksonville, FL  32202

*And*

ROBERT D. BENDER, IN HIS OFFICIAL
CAPACITY AS ESCAMBIA COUNTY
SUPERVISOR OF ELECTIONS
213 Palafox Pl, 2nd Floor
Pensacola, FL  32502

*And*

KAITI LENHART, IN HER OFFICIAL
CAPACITY AS FLAGLER COUNTY
SUPERVISOR OF ELECTIONS
1769 E. Moody Blvd.
Building 2 Suite 101
Bunnell, FL  32110

*And*

HEATHER RILEY, IN HER OFFICIAL
CAPACITY AS FRANKLIN COUNTY
SUPERVISOR OF ELECTIONS
47 Ave F,
Apalachicola, FL  32320

*And*

SHIRLEY GREEN KNIGHT, IN HER
OFFICIAL CAPACITY AS GADSEN
COUNTY SUPERVISOR OF ELECTIONS
16 South Madison Street
Quincy, FL  32351

*And*

CONNIE D. SANCHEZ, IN HER OFFICIAL
CAPACITY AS GILCHRIST COUNTY
SUPERVISOR OF ELECTIONS
112 South Main Street, Room 137
Trenton, FL  32693

*And*

ALETRIS FARNAM, IN HER OFFICIAL
CAPACITY AS GLADES COUNTY
SUPERVISOR OF ELECTIONS
998 US Hwy 27 South
Moore Have, FL  33471

*And*

JOHN M. HANLON, IN HIS OFFICIAL
CAPACITY AS GULF COUNTY
SUPERVISOR OF ELECTIONS
401 Long Avenue
Port St Joe, FL  32456

*And*

LAURA HUTTO, IN HER OFFICIAL
CAPACITY AS HAMILTON COUNTY
SUPERVISOR OF ELECTIONS
1153 US Hwy 41 NW, Suite 1
Jasper, FL  32052

*And*

DIANE SMITH, IN HER OFFICIAL
CAPACITY AS HARDEE COUNTY
SUPERVISOR OF ELECTIONS
131 K.D. Revell Rd.
Wauchula, FL  33873

*And*

SHERRY TAYLOR, IN HER OFFICIAL
CAPACITY AS HENDRY COUNTY
SUPERVISOR OF ELECTIONS
25 E. Hickpochee Avenue
LaBelle, FL  33935

*And*

SHIRLEY ANDERSON, IN HER OFFICIAL
CAPACITY AS HERNANDO COUNTY
SUPERVISOR OF ELECTIONS
16264 Spring Hill Drive
Brooksville, FL  34604

*And*

KAREN HEALY, IN HER OFFICIAL
CAPACITY AS HIGHLANDS COUNTY
SUPERVISOR OF ELECTIONS

580 S Commerce Ave
Suite A201
Sebring, FL  33870

*And*

CRAIG LATIMER, IN HIS OFFICIAL
CAPACITY AS HILLSBOROUGH
COUNTY SUPERVISOR OF ELECTIONS
Robert L. Gilder Elections Service Center
2514 North Falkenburg Rd.
Tampa, FL  33619

*And*

H. RUSSELL "RUSTY" WILLIAMS, IN
HIS OFFICIAL CAPACITY AS HOLMES
COUNTY SUPERVISOR OF ELECTIONS
201 N. Oklahoma Street, Suite 102
Bonifay, FL  32425

*And*

LESLIE ROSSWAY SWAN, IN HER
OFFICIAL CAPACITY AS INDIAN RIVER
COUNTY SUPERVISOR OF ELECTIONS
4375 43rd Avenue
Vero Beach, FL  32967

*And*

CAROL A DUNAWAY, IN HER OFFICIAL
CAPACITY AS JACKSON COUNTY
SUPERVISOR OF ELECTIONS
2851 Jefferson Street
Marianna, FL  32448

*And*

MICHELLE MILLIGAN, IN HER
OFFICIAL CAPACITY AS JEFFERSON
COUNTY SUPERVISOR OF ELECTIONS
1175 W. Washington St.
Monticello, FL  32344

*And*

TRAVIS HART, IN HIS OFFICIAL
CAPACITY AS LAFAYETTE COUNTY
SUPERVISOR OF ELECTIONS
120 W. Main Street, RM 207
P.O. Box 76
Mayo, FL  32066

*And*

ALAN HAYS, IN HIS OFFICIAL
CAPACITY AS LAKE COUNTY
SUPERVISOR OF ELECTIONS
1898 E. Burleigh Blvd.
Tavares, FL  32778

*And*

TOMMY DOYLE, IN HIS OFFICIAL
CAPACITY AS LEE COUNTY
SUPERVISOR OF ELECTIONS
Melvin Morgan Constitutional Complex
2480 Thompson St, 3rd Floor
Fort Myers, FL  33901

*And*

MARK S. EARLEY, IN HIS OFFICIAL
CAPACITY AS LEON COUNY
SUPERVISOR OF ELECTIONS
2990-1 Apalachee Parkway
Tallahassee, FL  32301

*And*

TAMMY JONES, IN HER OFFICIAL
CAPACITY AS LEVY COUNTY
SUPERVISOR OF ELECTIONS
421 S. Court Street
Bronson, FL  32621

*And*

GRANT CONYERS, IN HIS OFFICIAL
CAPACITY AS LIBERTY COUNTY
SUPERVISOR OF ELECTIONS

10816 NW State Road 20
Bristol, FL  32321-0597

*And*

HEATH DRIGGERS, IN HIS OFFICIAL
CAPACITY AS MADISON COUNTY
SUPERVISOR OF ELECTIONS
239 SW Pinckney St.
Madison, FL  32340

*And*

JAMES SATCHER, IN HIS OFFICIAL
CAPACITY AS MANATEE COUNTY
SUPERVISOR OF ELECTIONS
600 301 Blvd. W, Suite 108
Bradenton, FL  34205

*And*

WESLEY WILCOX, IN HIS OFFICIAL
CAPACITY AS MARION COUNTY
SUPERVISOR OF ELECTIONS
Marion County Election Center
981 NE 16th Street
Ocala, FL  34470

*And*

VICKI DAVIS, IN HER OFFICIAL
CAPACITY AS MARTIN COUNTY
SUPERVISOR OF ELECTIONS
135 SE Martin Luther King, Jr. Blvd.
Stuart, FL  34994

*And*

CHRISTINA WHITE, IN HER OFFICIAL
CAPACITY AS MIAMI-DADE COUNTY
SUPERVISOR OF ELECTIONS
2700 NW 87 Avenue
Miami, FL  33172

*And*

x

R. JOYCE GRIFFIN, IN HER OFFICIAL
CAPACITY AS MONROE COUNTY
SUPERVISOR OF ELECTIONS
5200 College Rd.
Key West, FL  33040

*And*

JANET H. ADKINS, IN HER OFFICIAL
CAPACITY AS NASSAU COUNTY
SUPERVISOR OF ELECTIONS
James S. Page Governmental Complex
96135 Nassau Place, Suite 3
Yulee, FL  32097

*And*

PAUL LUX, IN HIS OFFICIAL CAPACITY
AS OKALOOSA COUNTY SUPERVISOR
OF ELECTIONS
302 N Wilson St., Ste 102
Crestview, FL  32536

*And*

GLEN GILZEAN, IN HIS OFFICIAL
CAPACITY AS ORANGE COUNTY
SUPERVISOR OF ELECTIONS
119 West Kaley Street
Orlando, FL  32806

*And*

MARY JANE ARRINGTON, IN HER
OFFICIAL CAPACITY AS OSCEOLA
COUNTY SUPERVISOR OF ELECTIONS
2509 E. Irlo Bronson Memorial Highway
Kissimmee, FL  34744

*And*

WENDY SARTORY LINK, IN HER
OFFICIAL CAPACITY AS PALM BEACH
COUNTY SUPERVISOR OF ELECTIONS
4301 Cherry Road

West Palm Beach, FL  33409

*And*

BRIAN E. CORLEY, IN HIS OFFICAL
CAPACITY AS PASCO COUNTY
SUPERVISOR OF ELECTIONS
P.O. Box 300
Dade City, FL  33526

*And*

JULIE MARCUS, IN HER OFFICIAL
CAPACITY AS PINELLAS COUNTY
SUPERVISOR OF ELECTIONS
13001 Starkey Rd.
Largo, FL  33773

*And*

LORI EDWARDS, IN HER OFFICIAL
CAPACITY AS POLK COUNTY
SUPERVISOR OF ELECTIONS
250 S. Broadway Ave.
Bartow, FL  33830

*And*

CHARLES L. OVERTURF, III, IN HIS
OFFICIAL CAPACITY AS PUTNAM
COUNTY SUPERVISOR OF ELECTIONS
2509 Crill Ave., Suite 900
Palatka, FL  32177

*And*

TAPPIE VILLANE, IN HER OFFICIAL
CAPACITY AS SANTA ROSA COUNTY
SUPERVISOR OF ELECTIONS
6495 Caroline St., Ste. F
Milton, FL  32570

*And*

RON TURNER, IN HIS OFFICIAL
CAPACITY AS SARASOTA COUNTY
SUPERVISOR OF ELECTIONS
Terrace Building
2001 Adams Lane
Sarasota, FL  342237

*And*

CHRIS ANDERSON, IN HIS OFFICIAL
CAPACITY AS SEMINOLE COUNTY
SUPERVISOR OF ELECTIONS
1500 E. Airport Blvd.
Sanford, FL  32773

*And*

VICKY OAKES, IN HER OFFICIAL
CAPACITY AS ST. JOHNS COUNTY
SUPERVISOR OF ELECTIONS
4455 Avenue A, Suite 101
St. Augustine, FL  32095

*And*

GERTRUDE WALKER, IN HER OFFICIAL
CAPACITY AS ST. LUCIE COUNTY
SUPERVISOR OF ELECTIONS
Renaissance Business Park
4132 Okeechobee Road
Fort Pierce, FL  34947

*And*

WILLIAM "BILL" KEEN, IN HIS
OFFICIAL CAPACITY AS SUMTER
COUNTY SUPERVISOR OF ELECTIONS
7375 Powell Road, Suite #125
Wildwood, FL  34785

*And*

JENNIFER KINSEY, IN HER OFFICIAL
CAPACITY AS SUWANEE COUNTY
SUPERVISOR OF ELECTIONS
302 Pine Ave., S.W.

Live Oak, FL  32064

*And*

DANA SOUTHERLAND, IN HER
OFFICIAL CAPACITY AS TAYLOR
COUNTY SUPERVISOR OF ELECTIONS
433 US 19 N
Perry Florida, 32347

*And*

DEBORAH K. OSBORNE, IN HER
OFFICIAL CAPACITY AS UNION
COUNTY SUPERVISOR OF ELECTIONS
175 West Main St.
Lake Butler, FL  32054

*And*


LISA LEWIS, IN HER OFFICIAL
CAPACITY AS VOLUSIA COUNTY
SUPERVISOR OF ELECTIONS
1750 S. Woodland Blvd.
DeLand, FL  32720

*And*

JOE MORGAN, IN HIS OFFICIAL
CAPACITY AS WAKULLA COUNTY
SUPERVISOR OF ELECTIONS
3115 B Crawfordville Hwy.
Crawfordville, FL  32327

*And*

RYAN MESSER, IN HIS OFFICIAL
CAPACITY AS WALTON COUNTY
SUPERVISOR OF ELECTIONS
Walton County Courthouse
571 US Hwy 90 East, Suite 102
DeFuniak Springs, FL  32433

*And*

DEIDRA MALLOY PETTIS, IN HER
OFFICIAL CAPACITY AS WASHINGTON
COUNTY SUPERVISOR OF ELECTIONS
1424 Jackson Ave., Suite C
Chipley, FL  32428

*Respondents.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. xvii

I.    SUMMARY OF THE ARGUMENT ......................................................................... 1

II.   ARGUMENT .................................................................................................................. 2

   **A.**  The Amended Complaint contains allegations sufficient to invoke federal jurisdiction .... 3

   **B.**  Petitioners have stated a valid *mandamus* relief under the All Writs Act because it is the only remedy available to adjudicate Petitioners' claims. ........................................................ 8

III.   CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Anderson v. United States*,
    417 U.S. 211 (1974)……………………………………………………...……………10

*Baker v. Carr*,
    369 U.S. 186 (1962)……………………………………………………………...…4,

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).. ………………………………………….…………………2

*Cheney v. United States Dist. Ct.*,
    542 U.S. 367 (2004)…………………………………………………………...…12

*CompuSpa, Inc. v. IBM*, 228
    F. Supp. 2d 613 (2002)…………………………………………………………2

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013)……………………………………………..…….…….......3

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*,
    438 U.S. 59 (1978)…………….……………………………………………….....4

*Federal Election Comm'n v. Akins*,
    524 U.S. 11 (1998)……………………………...…………….…....…..…..3, 4

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)……………………………….…………………………..5

*Georgia Republican Party v. Sec. & Exch. Comm'n*,
    888 F.3d 1198 (11th Cir. 2018)…………….……………………………...…..5

*Gill v. Whitford*,
    585 U.S. 48 (2018)…………………….…………………………..……....3

*Gomillion v. Lightfoot*,
    364 U.S. 339 (1960)……………………………………………...……………9

*Gray v. Sanders*,
    372 U.S. 368 (1963)…………………………………...……………3, 9

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)…………………………………….……..…………..5

*Hollingsworth v. Perry*,
    558 U.S. 183 (2010)……………………………………..…………………12

*In re: Coy*,
    127 U.S. 731 (1888)……………………………………..…………….……10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)……………………………………..……….……….1, 3, 4

*Massachusetts v. Envtl. Prot. Agency*,
    549 U.S. 497 (2007)………………………………………..……………….…..4

*Oregon v. Mitchell*,
    400 U.S. 112 (1970)………………………………………………………....10

*Reynolds v. Sims*,
    377 U.S. 533 (1964)……………………………………..……………….9

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)………………………………………..…….……...………3

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)……………………………………..…….……………..…5

*Wilbur v. United States*,
    281 U.S. 206 (1930)……………………………………………………..……12

## Statutes                                           Page(s)

28 U.S.C. §§ 1331……………………………………………………….……12

28 U.S.C. § 1651(a)…………………………………………………...…………12

52 U.S.C. § 20501……………………………………………………...…….2, 12

52 U.S.C. §§ 20501(b)(3)-(4)…………………………………….……………11

52 U.S.C. § 20507(a)(4)……………………………………………….…………11

52 U.S.C. § 21081(a)(1)(A)(ii)……………………………………...…………11

52 U.S.C. § 21081(a)(5)…………………………………………….…………10

52 U.S.C. § 21083(a)(1)(A)………………………………………...….……….11

52 U.S.C. § 20901…………………………………………………………………2

52 U.S.C. § 21111…………………………………………………………...11

**Other Authorities**                                    **Page(s)**

U.S. Const. art. I, § 4…………………………………………………8, 9, 10, 13

U.S. Const. art. I, § 8, cl. 18……………………………...………………………10

## I.    SUMMARY OF THE ARGUMENT

Respondent, United States Attorney General Merrick Garland, (hereinafter "Respondent") asserts that this Court should dismiss Petitioners' claim because they lack subject-matter jurisdiction. Petitioners, United Sovereign Americans, Inc. (hereinafter "USA"), Defending Freedom Petitioners, Jeffrey Buongiorno, Gabrielle Fox, Christopher Gleason, Gerry James, Judith Jensen, Jane Justice, Michael Peters, David Schaffel, and Cathi Chamberlain (hereinafter "Petitioners") established Article III standing in the Amended Complaint.  A complaint must simply allege standing; standing need not be proven at the pleading stage. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing ultimately requires injury, causation, and redressability, all of which are alleged in the Complaint. Qualified voters have constitutionally protected voting rights, and that an official's failure to adhere to state and federal election laws amounts to a deprivation of that legally protected interest. These principles fit squarely within the purview of Petitioners' allegations. Petitioners allege in actions by Respondent which caused direct injury to their right to vote. As further explained below, the Complaint appropriately alleges a particularized injury and imminent risk of future harm rather than a generalized grievance shared by the community. Petitioners respectfully suggest that they possess standing to invoke federal jurisdiction.

Respondent also contends that Petitioners do not establish extraordinary circumstances nor show a clear duty to act under *mandamus*. Respondent trivializes the extraordinary circumstances that exist in this matter. The right to vote is the critical aspect of representative republic, and the evidence provided in the complaint shows clear violations by Florida State and County Officials and clear inaction by the federal Respondent to cure the State violations. This failure to act has led to widespread election irregularities all over the county and will continue to occur unless

Respondent acts and enforces federal election law. Federal Respondent has a duty to enforce and prosecute federal elections laws, and if these election laws continue to be unenforced, individuals including Petitioners will be deprived of the right to fair elections.

Lastly, Respondent contends that Petitioners have failed to state a valid claim under the All Writs Act because the court lacks jurisdiction. The All Writs Act is one of the few tools that Petitioner can use to stop Respondent's inaction against Florida State and County Officials continuing to violate Federal election law. In the Help Americans Vote Act[1] (hereinafter "HAVA") and the National Voter Registration Act[2] (hereinafter "NVRA"), there is explicit language where the Respondent may act if there are nonuniform and discriminatory acts establishing a clear duty. There are clear election uniformity issues since Florida State Officials have elected not to follow federal laws and have refused to comply with congressionally mandated minimum allowed error rates. The All Writs Acts is the only way to hold Respondent accountable for his inaction.

## II.    ARGUMENT

In response to a Motion to Dismiss, a Petitioner is not required to prove factual allegations to overcome a 12(b)(6) motion. *CompuSpa, Inc. v. IBM*, 228 F. Supp. 2d 613, 624-625 (2002). "To survive a motion to dismiss, the factual allegations of a complaint 'must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This Court should deny the Respondent's Motion to Dismiss because this Court has subject matter jurisdiction over Petitioners, and Petitioners submitted a well pleaded Amended Complaint.

---

[1] 52 U.S.C. §§ 20901 *et seq.*
[2] 52 U.S.C. §§ 20501 *et seq.*

**A.**  The Amended Complaint contains allegations sufficient to invoke federal jurisdiction

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement [of Article III] is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To invoke federal jurisdiction, a plaintiff must satisfy the "irreducible" minimum requirements of Article III standing: (1) injury-in-fact; (2) causation; and (3) redressability. *Lujan, 504 U.S. at 560-561*. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). In other words, the injury must affect the "plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560. See *Gill v. Whitford*, 585 U.S. 48, 65 (2018) ("a person's right to vote is individual and personal in nature") (internal citation and quotation marks omitted). The injury must also be actual or imminent, not speculative, meaning the injury must have already occurred or be likely to occur in the near future. *Clapper*, 568 U.S. at 409.

It is a well-recognized principle that any person whose right to vote has been impaired has standing to sue. *Gray v. Sanders,* 372 U.S. 368, 375 (1963). Qualified voters have a constitutionally protected right to cast their ballots and have their votes counted and reported correctly, undiluted by illegal ballots. *Id.* at 380. As stated by the Supreme Court regarding voting rights, "the most basic of political rights, [are] sufficiently concrete and specific" to establish standing. *Federal Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998). Respondent argues that Petitioners' claims amount to mere generalized grievances concerning improper government conduct and therefore have failed to establish Article III standing.  Generalized grievances in the context of standing refer

to instances where a plaintiff's harm concerns "his and every citizen's interest in proper application of the Constitution and laws and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573. However, the Supreme Court has previously held that a group of qualified voters alleging that a state's action diminished the effectiveness of their vote did not amount to a generalized grievance. *Baker v. Carr*, 369 U.S. 186, 208 (1962).

While persons do not have standing to sue when they claim an injury that is suffered by all members of the public, "where the harm is concrete, though widely shared, the Court has found 'injury in fact.'" *Akins*, 524 U.S. at 24. The Supreme Court has been clear that "where large numbers of voters suffer interference with voting rights…" the interests related to that are sufficiently concrete to obtain the standing necessary to seek redress under Article III. *Id.* In *Massachusetts v. Envtl. Prot. Agency*, the "…EPA maintain[ed] that because greenhouse gas emissions inflict widespread harm, the doctrine of standing presents an insuperable jurisdictional obstacle." 549 U.S. 497, 517 (2007). The Court found that the "EPA's steadfast refusal to regulate greenhouse gas emissions presents a risk of harm to Massachusetts that is both 'actual' and 'imminent.'" *Id.* at 498-499. Further, the Court reasoned that there is a substantial likelihood that the relief requested would prompt the EPA to reduce the risk. *Massachusetts v. E.P.A*., 549 U.S. 497, 521 (2007)(citing *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 79 (1978). Here, the harms implicating voting rights are arguably widespread (as, arguendo, are the effects of greenhouse gas emissions, as in Massachusetts v. E.P.A. supra.) In addition, this Court's involvement is the only solution that would aid in Petitioners request to prompt Respondent to evaluate and correct the voter discrepancies. Thus, Petitioners complaining of election-related injuries from Respondent also have standing to seek review by federal courts under Article III, just as did those seeking relief in the cases cited above.

The Supreme Court has stated that when a plaintiff is a group or organization representing several persons with similar injuries, such "representational standing" exists when an organization's "members would otherwise have standing to sue in their own right, the interests at stake are germane to that organization's purpose, and neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Additionally, an organization can assert an injury in its own right when a defendant's actions impede efforts to promulgate its organizational mission. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). To establish such organizational standing, the organization must advance allegations identifying at least one (1) member who has suffered or will suffer injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added); *see Georgia Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1204 (11th Cir. 2018).

The Amended Complaint here alleges standing sufficient to establish subject-matter jurisdiction under Article III. Plaintiff United Sovereign Americans, Inc., is a nonprofit corporation incorporated in the state of Missouri. Plaintiff Defending Freedom is a non-profit organization incorporated in St. Petersburg, Both organizations establish representational standing. Petitioner USA's interests at stake relate to the heart of USA as its mission is to ensure all Unites States elections are fair, accurate, and trustworthy; the very heart of Petitioners' claims. While Plaintiff Defending Freedom is dedicated to voter integrity within the State of Florida, another pillar to Petitioner's claim. Finally, the claim set forth in this matter is not for an individual of the organization, rather it is for the benefit of all legally registered voters, protecting their votes against the dilution that occurred in 2022, and prevent further voter inaccuracies in future federal elections regulated by the State of Florida.

5

Each individual Plaintiff also has standing. Petitioners Jeffrey Buongiorno, Gabrielle Fox, Christopher Gleason, Gerry James, Judith Jensen, Jane Justice, Michael Peters, and David Schaffel are all Florida residents who ran for an elected position in the 2024 election. Those who directly ran for office in 2024 have no way to know the accuracy of the election since the errors from 2022 have not been addressed, causing harm to future elections if federal law is not enforced. This data was discussed at length in the Amended Complaint and if not corrected will cause the same harm in 2026 and following federal elections due to the cyclical nature of elections.[3] Petitioner Cathi Chamberlain is a Florida resident and poll watcher for Pinellas County, Florida who witnessed voter irregularities in 2022. All of these Petitioners suffered injury and are likely to suffer injury again in 2026 if the court does not demand proper election protocol is followed.

Respondent's assertion that Petitioners lack standing by virtue of Petitioners' failure to assert a legally cognizable injury, and likelihood of *future* harm in *subsequent* federal elections administered by Respondent, ignores the factual allegations Petitioners have plainly stated in the Complaint. Petitioners contend they are entirely reasonable in fearing that the demonstrated and pled issues which occurred in the 2022 federal election in Florida will reoccur since Florida election officials, as alleged in the complaint, have done nothing to correct those errors despite notice. Respondent has done nothing to enforce or ensure uniformity in how Florida and the Nation carry out federal elections. These irregularities are directly caused by the Respondent's inaction.

Turning to the issue of whether Petitioners' injury constitutes simply a generalized grievance shared by the whole community, Petitioners suggest it was not the whole community that sent written inquiries to State Officials requesting transparency as to Florida's compliance with federal election laws and explanations regarding documented voter and registration

---

[3] Data for the 2024 General Election is not yet available to Petitioners.

irregularities. In the same vein, the State Officials did not deny the whole community of such requests. State Officials denied Petitioners' requests specifically. The whole community did not comb through innumerable pages of hard voter data to ascertain the accuracy of voter registration rolls, Petitioners did that. The whole community did not create a comprehensive report on apparent registration and voting violations, Petitioners did. Petitioners informed the whole community of these issues, and the whole community could not have realized them on its own. Petitioners themselves, took these actions which distinguished Petitioners from the community at large -- actions which are not in the abstract. Rather, Petitioners have advanced multiple and specific allegations concerning, inter alia, discrepancies in voting records, which suggest that this is not merely a speculative issue, but a very real problem causing Petitioners and Petitioners' members legitimate concerns over whether Florida is counting and considering their votes in such a way that Petitioners' votes are undiluted.

In sum, for purposes of a Motion to Dismiss, the Complaint states a sufficiently plausible cause of action, at the early stages of litigation, to confer presumptive standing upon Petitioners. Petitioners set forth in the Complaint a series of factual allegations establishing that named Petitioners are individuals qualified to vote in Florida whose votes were diluted in 2022 through Respondent's failure to ensure that Florida's voting systems and voter registration records met certain federal standards prior to certification. If the errors identified are not corrected, the election's integrity will continue to be called into question. Petitioners have identified said anomalies and have pled they brought them to the attention of Florida election officials who bear the responsibility delegated by the Florida legislature to regulate federal elections. Respondent has failed to investigate and address these anomalies despite Respondent's duty and responsibility to

do so. No other means exist to require a government official to perform his duties apart from a writ of *mandamus*.

Petitioners have brought this action in an effort to require, through court order, the Attorney General investigate and take appropriate action concerning the apparent errors Petitioners have brought to Respondent's attention. Petitioners do not seek this Court to order Respondent how to perform his jobs. Petitioners seek court intervention to require Respondent simply to do his jobs and take whatever action Respondent considers appropriate in order to comply with Congressional mandates. Petitioners contend the Court ought to order Respondent to report, investigate, and enforce to the Court's satisfaction the reasons for such significant discrepancies, for example, how it is possible that in 2022, various Florida county boards of elections could possibly have certified a federal election where more votes were counted than ballots cast?

Petitioners suggest they have satisfied the injury-in-fact requirement under Article III, sufficiently to confer subject-matter jurisdiction upon this Court in order to seek the requested relief.

**B.** <u>Petitioners have stated a valid *mandamus* relief under the All Writs Act because it is the only remedy available to adjudicate Petitioners' claims.</u>

Petitioners have established federal jurisdiction for a *Mandamus* Claim and for Respondent to refuse the relief sought is to discount the Petitioners' right to vote. Under the Elections Clause, Congress conferred to individual state legislatures the authority to conduct statewide federal elections. U.S. Const. art. I, § 4. The Constitution's Framers' intent is clear upon a plain reading of the Constitution. The various states have presumptive authority to regulate and administer the election of all federal officers. However, by including the language "...but the Congress may at any time by Law make or alter such Regulations," the Framers unambiguously intended Congress

retain the ultimate authority under the Constitution to regulate federal elections. U.S. Const. art. I, § 4. Thus, the Constitution spells out that the default authority to regulate federal elections lies with the several states in the absence of acts of Congress. This makes the states subordinate to Congress when Congress from time to time chooses to act.  When Congress chooses to do so, it becomes the duty of the Attorney General of the United States to carry out Congress' will. The Framers intentionally intertwined the powers of the various states with those of Congress in the conducting of federal elections, while making certain Congress maintained the ultimate power over the selection of its own members, thereby carving out a narrow exception to the principles of dual sovereignty and federalism. The Constitution reserves to Congress the ultimate power to regulate federal elections, while simultaneously delegating the presumptive power to individual state legislatures. The Florida General Assembly has further delegated the state's power to regulate federal elections to the individual county board of elections. These State and County Officials, thus, act as a quasi-federal officers when mandated to carry out the will of Congress. The State and County Officials fail or refuse to carry out Congress' intent, it falls to Respondent to require that quasi-federal officials to adhere to federal law. Only Respondent is empowered to enforce and execute the will of Congress.

While a state agency, generally, is insulated from federal judicial review when exercising power within the exclusive domain of a state interest, "such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right." *Gray*, 372 U.S. at 372 (citing *Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1960)). Federal courts regard the right to vote in a fairly conducted election as federally protected, *Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964), and the Supreme Court decreed that Congress has authority under the Constitution's Necessary and Proper Clause to regulate any activity during a mixed federal/state election that

exposes the federal election process to potential misuse, whether that harm materializes or not. *In re: Coy*, 127 U.S. 731, 752 (1888). "Every voter in a federal…election…whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes. *Anderson v. United States*, 417 U.S. 211, 227 (1974). "[T]he right to vote freely for a candidate of one's choice is of the essence of a democratic society," *Oregan v. Mitchell*, 400 U.S. 112, 138-39 (1970). Congress chose to exercise its powers under the Elections Clause and the Necessary and Proper Clause to intervene in Georgia's otherwise absolute constitutional authority to regulate federal elections by enacting federal election laws including HAVA and NVRA. U.S. Const. art. I, § 4; U.S. Const. art. I, § 8, cl. 18. In doing so, Congress effectively, has deputized the legislature in Georgia to carry out its will.  The Georgia legislature then delegated that responsibility from the Constitution and Congress to Respondent, thus here making Respondent directly answerable to the will of Congress.

Congress chose to exercise its powers under the Elections Clause and the Necessary and Proper Clause to intervene in Florida's otherwise default absolute constitutional authority to regulate federal elections by enacting federal election laws including HAVA and NVRA. U.S. Const. art. I, § 4; U.S. Const. art. I, § 8, cl. 18. Respondent is the only existing enforcement authority to hold the State and County Officials accountable. Without this Honorable Court enforcing such accountability,  States are free to actively ignore federal law and regulations in any federal election.

Under HAVA, the two (2) provisions at issue impose mandatory language on election officials. For example, 52 U.S.C. § 21081(a)(5) states that the "error rate of [a] voting system in counting ballots…shall comply with the error rate standards established under section 3.2.1. of the

voting systems standards issued by the Federal Election Commission[.]" Use of the word "shall" constitutes mandatory language. Furthermore, 52 U.S.C. § 21081(a)(1)(A)(ii) states voting systems "shall…provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error.)" The use of "shall," again, constitutes mandatory language. HAVA states "[the] Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief ... as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, and 21083 of this title." 52 U.S.C. § 21111.  Here, the requirement is for voting systems, but election officials subject to judicial authority are responsible for configuring and managing voting machines. NVRA likewise contains mandatory language. For example, "each State shall…conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of death of the registrant; or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4).

NVRA exists in part "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(3)-(4). Similarly, HAVA mandates that voter roll databases contain only registrations of qualified citizen voters residing in that state. 52 U.S.C. § 21083(a)(1)(A). Maintaining the accuracy of voter rolls and voting systems, therefore, is required under the Constitution to uphold the right of the people to choose their representatives. The requirements of NVRA and HAVA are mirrored in Florida's election laws. The NVRA states "The Attorney General may bring a civil action in an appropriate

district court for such declaratory or injunctive relief as is necessary to carry out this chapter." 52 U.S.C. §§ 20501(a). A writ of *mandamus* is the enforcement mechanism through which the Respondent can be held accountable to Congress for refusing to enforce Congressional legislation.

The All Writs Act grants this Court the power to "issue all writs necessary or appropriate in the aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A writ of *mandamus* is warranted where the moving party establishes that "(1) no other adequate means [exist] to attain the relief he desires, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (quoting *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380-381 (2004)) (internal quotation marks omitted). Writs of *mandamus* apply to ministerial actions. A "ministerial action" is a duty in a particular situation so plainly prescribed, as is the case with respect to the mandatory HAVA and NVRA language cited above, as to be free from doubt and equivalent to a positive command. *Wilbur v. United States*, 281 U.S. 206, 218 (1930). *Mandamus* under the All Writs Act is a remedy reserved for extraordinary circumstances where no other form of relief can adequately provide redress. *Cheney*, 542 U.S. at 369. Refusing to comply with federal election laws, in defiance of Congress, constitutes an extraordinary circumstance.

Here, Respondent argues that *mandamus* is not "necessary or appropriate" to the resolution of Petitioners' claims and is not agreeable to the usages and principles of law because the requested relief exceeds the permissible scope of a writ of *mandamus*.[4]  Respondent cannot dispute that Congress delegated the power to regulate and enforce the administration of elections under HAVA

---

[4] Petitioners have established standing in this matter, as outlined above and under 28 U.S.C. §§ 1331 and 1367(a), and therefore the requested writ of *mandamus* is "in aid of" a matter over which this Court has jurisdiction.

and NVRA to the Attorney General. Respondent cannot dispute Congress' ultimate authority to regulate federal elections under the Elections Clause. U.S. Const. art. I, § 4. Respondent cannot dispute that Congressional mandates under HAVA and NVRA are plainly within the scope of his duties as Attorney General. It follows, then, that Respondent cannot dispute that he is required to enforce HAVA and NVRA in Florida's federal elections, coming to this court to require Florida to conduct such elections in accordance with federal law.

The very purpose of the All Writs Act is to provide a remedy by which federal courts may rectify extraordinary circumstances such as those at issue here. But Respondent argues, despite Congress' undisputed and superseding power to regulate federal elections, he is not required to comply with Congressional election legislation and therefore Petitioners cannot be afforded mandamus relief under the All Writs Act against Florida election officials on the basis that they are not a federal officials. In other words, according to Respondent, no Constitutional mechanism exists by which the Attorney General may hold state election officers accountable for violating federal law. Accepting Respondent's contention as true would lead to an absurd result, as Respondent State and County Officials would be effectively empowered to regulate and administer federal elections without any Congressional oversight or enforcement whatsoever in direct contradiction of the plain language of, inter alia, Article I, sec. 4 of the Constitution. The language of the Elections Clause clearly precludes this outcome, as the Constitution states that Congress retains the ultimate authority to regulate federal elections. The All Writs Act exists as an enforcement mechanism through which Congress, through Respondent, may enjoin state election officials from violating federal election legislation, including HAVA and NVRA.

Here, mandamus relief is not merely "necessary or appropriate" to this Court's resolution of Petitioners' claims, it is the only remedy available to compel Respondent State and County

13

Officials' subservience to Congress' ultimate authority to regulate the federal election processes. Petitioners are asking this Court to aid in addressing systemic issues raised in the Complaint by requiring Respondent to demand state officials follow federal election legislation. Only federal courts are empowered to resolve the whole of Petitioners' claims, and the only available remedy for purposes of adjudicating Petitioners' claims is the requested writ of mandamus.

### III.    CONCLUSION

Based on the foregoing, Petitioners respectfully request this Honorable Court deny Attorney General Respondent's Motion to Dismiss in the above-captioned matter.

Respectfully Submitted,

*/s/ Bruce L. Castor, Jr.*

Date: December 3, 2024                Bruce L. Castor, Jr.
                                      Counsel for Petitioners

14

## CERTIFICATE OF COMPLIANCE

I hereby certify that on December 3, 2024, that this memorandum contains 6,422 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F)

Respectfully Submitted,

*/s/ Bruce L. Castor, Jr.*

Bruce L. Castor, Jr.
Counsel for Petitioners

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2024, a copy of the foregoing Petitioners' Response in Opposition to Respondent's Motion to Dismiss was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties have access to this filing though the Court's system.

Respectfully Submitted,

*/s/ Bruce L. Castor, Jr.*

Bruce L. Castor, Jr.
Counsel for Petitioners

16